**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LYDIA COTZ,<br><br>      Plaintiff,<br><br>    v.<br><br>DIANE GUTIERREZ-SCACCETTI, *in her official capacity as Commissioner of the New Jersey Department of Transportation*,<br><br>      Defendant. | Civil Action No. 19-22075 (MAS) (ZNQ)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court upon Plaintiff Lydia Cotz's ("Plaintiff") Motion for a Temporary Restraining Order ("TRO") pursuant to Rule 65 of the Federal Rules of Civil Procedure. (ECF No. 2.) Defendant Diane Gutierrez-Scaccetti ("Defendant"), in her official capacity as Commissioner of the New Jersey Department of Transportation ("NJDOT"), opposed (ECF No. 7), and Plaintiff replied (ECF No. 8). The Court held a telephone conference on January 10, 2020 and set a deadline of January 17, 2020 for additional briefing. (ECF No. 9.) Plaintiff submitted correspondence on January 15, 2020 (ECF No. 12) requesting an extension of the briefing deadline to January 23, 2020, which Defendant opposed (ECF No. 13). On January 17, 2020, the Court granted Plaintiff's request. (ECF No. 14.) On January 24, 2020, Plaintiff submitted correspondence requesting a further extension to January 30, 2020. (ECF No. 15.) On February 2, 2020, ten days after the deadline passed, Plaintiff submitted a letter brief. (ECF

No. 16.) Plaintiff submitted further correspondence on February 26, 2020. (ECF No. 18.)[1] The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion for a Temporary Restraining Order is denied, and Plaintiff's Complaint is dismissed without prejudice.

I. **BACKGROUND**

In or around July 2013, Plaintiff became the owner of real property located at 306 Route 173 in Stewartsville, New Jersey (the "Property"). (Compl. *2, ECF No. 1.)[2] Since 1996, the Property has been on the National Register of Historic Places (the "National Register"). (*Id.*) The Property is an "irregularly shaped parcel of nearly [eight] acres, bordered to the north by State Route 173 and to the south and east by the Pohatcong Creek." (*Id.*) Towards the eastern terminus of the Property, the "parcel tapers to a point where State Route 173 crosses the Pohatcong Creek" on a bridge that was originally built in 1915. (*Id.*) The bridge was constructed on land acquired by Warren County, New Jersey, pursuant to a grant (the "Grant") from one of Plaintiff's predecessors in title. (*Id.* at *3.)

In or around 2010, NJDOT determined that the bridge was structurally deficient and no longer complied with modern safety standards, thus necessitating its replacement (the "Project"). (*Id.* at *4; *see also* Certification of Vandna Patel ("Patel Cert.") ¶ 3, Def.'s Opp'n Br. Ex. 1, ECF

---

[1] Because Plaintiff's January 24, 2020 correspondence, February 2, 2020 letter brief, and February 26, 2020 correspondence were submitted after the briefing deadline, they were not considered by the Court.

[2] Because the pages of the Complaint were not individually numbered, the Court references the page numbers as they appear in the ECF header and denotes such page references with an asterisk.

2

No. 7-1.) The Project would involve the extension of a guiderail[3] to comport with modern safety standards, specifically the 2015 NJDOT Roadway Design Manual. (Compl. *5; Patel Cert. ¶ 4.) The extension of the guiderail would also require the removal of "at least one majestic black walnut tree" which is approximately 100 years old. (Compl. *6.) Because of the Grant, as Plaintiff concedes, the Project would not require a taking by NJDOT. (*Id.* at *5.)

The initial design work on the Project was federally funded by the Federal Highway Administration ("FHWA"). (Patel Cert. ¶ 8.) NJDOT consulted with the New Jersey State Historic Preservation Office ("SHPO") "to determine [the Project's] area of potential effect" and to identify and assess the impact of the Project on any properties listed on the National Register. (*Id.* ¶ 9.) The FHWA concluded that the Project would "adversely affect" the Property and "considered alternatives to avoid or minimize the adverse effects [but] found they were not feasible." (*Id.* ¶¶ 11–12.) The FHWA, SHPO, and NJDOT subsequently developed a plan to attempt to mitigate the adverse effects of the Project. (*Id.* ¶ 13.)

Plaintiff first learned of the Project in or around 2014 when NJDOT representatives began staking out the boundaries of the Grant. (Compl. *6.) Thereafter, Plaintiff and her husband objected to the Project and held a series of meetings with an NJDOT project manager and other NJDOT representatives. (*Id.* at *6–7.)

In or around June 2018, NJDOT learned that "the funding mechanism used to fund the design portion of the [P]roject was not allowable by the FHWA." (Patel Cert. ¶ 25.) NJDOT, accordingly, decided to "proceed with the [P]roject as fully State[-]funded."[4] (*Id.*) Upon

---

[3] A "guiderail" is a "barrier whose primary function is to prevent penetration and safely redirect an errant vehicle away from a roadside or median hazard." (Patel Cert. ¶ 5.)

[4] NJDOT concedes, however, that "the design phase of the [P]roject" was financed with federal funds. (Patel Cert. ¶ 25.)

3

discovering that it had utilized an impermissible funding mechanism, NJDOT repaid FHWA the $667,643.83 incurred during the design phase of the Project. (*Id.*)

In or around November 2018, NJDOT hired a contractor to carry out the Project. (*Id.* ¶ 27.) In January 2019, NJDOT submitted "an application for [P]roject authorization" to SHPO, which included the installation of an extended guiderail and tree removal. (*Id.* ¶ 29.) When the NJDOT subcontractor attempted to remove the trees later that month, it was obstructed by Plaintiff, who entered the Project site, "yell[ed] at the contractor and call[ed] the Greenwich police." (*Id.* ¶ 30.) Following this incident, NJDOT considered an alternative design for the bridge, where the flared end of the guiderail would be replaced by a crash cushion.[5] (*Id.*) In February 2019, SHPO indicated that it preferred the original design with the flared guiderail because it was "less obtrusive within this historic setting" but "did not oppose the use of the crash cushion" if Plaintiff and her husband preferred that option. (*Id.*)

On or about February 6, 2019, NJDOT held a public forum and invited members of the public to "review exhibits of the [P]roject, ask questions[,] and discuss any concerns with NJDOT representatives and the contractor." (*Id.* ¶ 32.) On or about April 22, 2019, NJDOT presented the alternative design option to Plaintiff and her husband, but they rejected it. (*Id.* ¶¶ 33–34.)

On or about August 9, 2019, SHPO determined that "NJDOT's application for [P]roject authorization was technically complete and professionally sufficient." (*Id.* ¶ 36.) SHPO further stated that the Project "met the Secretary of the Interior's [s]tandards for [r]ehabilitation and . . . did not constitute an encroachment" on the Property. (*Id.* ¶ 38.)

---

[5] "A 'crash cushion' is a type of traffic barrier that can be used to shield obstructions[,] such as overhead sign supports, bridge piers, bridge abutments, ends of retaining walls, bridge parapets, bridge railings[,] and longitudinal barriers. Stated differently, a crash cushion is a type of an end treatment on a guiderail that enhances public safety." (Patel Cert. ¶ 31.)

4

On or about December 12, 2019, NJDOT engaged a contractor to remove trees from the Project area. (*Id.* ¶ 40.) Once again, Plaintiff and her husband obstructed the work; Plaintiff's husband physically stood in front of one of the trees to prevent its removal. (*Id.*)

On December 30, 2019, Plaintiff filed a one-count Complaint alleging that Defendant failed to properly assess the visual impact of the Project, in violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq.*; the National Historic Preservation Act ("NHPA"), 54 U.S.C. §§ 300101, *et seq.*; and the analogous New Jersey state law provisions.[6] (Compl. *7.) Plaintiff requested the Project "be enjoined pending proper and full completion of the § 106 review process."[7] (*Id.*) On the same day, Plaintiff moved for a Temporary Restraining Order enjoining Defendant from proceeding with the Project. (TRO Motion, ECF No. 2.)

## II. LEGAL STANDARD

The analysis for a TRO is the same as that for a preliminary injunction. *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 112 F.3d 689, 693 (3d Cir. 1997). Because the grant of injunctive relief is "an extraordinary remedy," a TRO "should be granted only in limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted). Plaintiff bears the burden of establishing that (1) it is likely to succeed on the merits; (2) it is likely to suffer immediate, irreparable harm; (3) the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Movants bear the burden of "meet[ing] the threshold for the first two 'most critical' factors: . . . that [they] can win on the

---

[6] Specifically, Plaintiff avers Defendant violated 54 U.S.C. § 300106, 42 U.S.C. § 4332, 36 C.F.R. § 800, N.J. Stat. Ann. § 13:1B-15.131, and N.J. Admin. Code § 7:4-7.4. (*See* Compl. *7.)

[7] Section 106 has been described as a "stop, look, and listen" provision, requiring an agency to acquire information before acting. *See Friends of the Atglen-Susquehanna Trail, Inc. v. Surface Transp. Bd.*, 252 F.3d 246, 252 (3d Cir. 2001). The specific Section 106 regulations are codified in 36 C.F.R. § 800, *et seq.*

5

merits . . . and that it is more likely than not [they will] suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id*. Failure to establish any element renders the remedy inappropriate. *See NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

## III. DISCUSSION

The Court, at the outset, notes that Plaintiff cites to no authority, Third Circuit or otherwise, for the proposition that either the NHPA or NEPA creates a private right of action. (*See generally* Pl.'s Moving Br.; *see generally* Pl.'s Reply Br.) Because the Court's jurisdiction over this matter is premised on Plaintiff stating a claim under federal law, the Court begins by analyzing whether Plaintiff has established a reasonable likelihood of success on the merits for either her NHPA or NEPA claim.[8]

### A. **Plaintiff Fails to Establish A Likelihood of Success on the Merits for Her NHPA Claim**

As a threshold matter, the Court analyzes whether either the NHPA or NEPA creates a private right of action. A "private right[] of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). When analyzing whether an implied private right of action exists, a court must determine whether the federal statute "displays an intent to create not just

---

[8] Plaintiff alleges "[t]his Court has [original] jurisdiction pursuant to [28 U.S.C. § 1331,] as the claims arise under a federal statute . . . the [NHPA] and . . . [NEPA]. This Court also has concurrent jurisdiction over pendent state law claims pursuant to [28 U.S.C. § 1367]." (Compl. ¶ 3.)

a private right but also a private remedy." *Id.* (citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)).

In *Sandoval*, the Court held that, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Sandoval*, 532 U.S. at 286. Therefore, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* "Statutory intent on this latter point is determinative," and "[w]ithout it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87. Considering *Sandoval*, the Third Circuit created a two-pronged test to determine whether a private right of action exists under a federal statute: "(1) whether Congress intended to create a personal right in the plaintiff; and (2) whether Congress intended to create a personal remedy for that plaintiff." *McGovern v. Cty. of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009). If both prongs of the test are satisfied, a court "may . . . hold that an implied private right of action exists under a federal statute." *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 301 (3d Cir. 2007).

Most recently, in *Camden County Historical Society v. Department of Transportation*, the District of New Jersey held that no private right of action exists under the NHPA. 371 F. Supp. 3d 187, 189 (D.N.J. 2019). The Court finds the reasoning of *Camden County* persuasive and adopts it here.

In *Camden County*, the court sought to reconcile the Third Circuit's 1991 decision in *Boarhead Corp. v. Erickson*[9]—wherein the Third Circuit found that the NHPA created a private right of action—with the analytical schema the Supreme Court articulated in 2001 in *Sandoval*.

---

[9] 923 F.2d 1011 (3d Cir. 1991).

7

*Camden Cty. Historical Soc'y*, 371 F. Supp. 3d at 190–91. In *Boarhead*, the Third Circuit found that, because of the fee-shifting provision of the NHPA, "Congress must have intended to establish a private right of action to interested parties." *Boarhead Corp.*, 923 F.2d at 1017 (citing *Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 875 F.2d 453, 458 (5th Cir. 1989)).

The *Camden County* court noted that, because neither the Third Circuit nor the Supreme Court had expressly overruled *Boarhead*, it was still the law of the Third Circuit. *Camden Cty. Historical Soc'y*, 371 F. Supp. 3d at 190. The court, however, explained that a "fair question remains whether, under principles of vertical *stare decisis*, this [c]ourt is bound to follow *Boarhead* in light of the subsequent decision by the Supreme Court in *Sandoval*, and subsequent Third Circuit decisions applying *Sandoval*." *Id.*

The NHPA states, in relevant part,

> [t]he head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, shall take into account the effect of the undertaking on any historic property. The head of the Federal agency shall afford the Council a reasonable opportunity to comment with regard to the undertaking.

54 U.S.C. § 306108. The *Camden County* court noted that "[t]his provision contains no mention of rights at all." *Camden Cty. Historical Soc'y*, 371 F. Supp. 3d at 193. Moreover, "the statute focuses on the person regulated (i.e., 'the Federal agency') rather than entitlements for the person protected" and "task[s] a federal agency with enforcement." *Id.*

The *Camden County* plaintiff argued that the text of 36 C.F.R. 800.2(c)(5), which describes who may participate in the Section 106 review process, evidenced a Congressional intent to create a private right action. *Id.* That section provides, in relevant part, "[c]ertain individuals and

organizations with a demonstrated interest in the undertaking *may* participate [in the Section 106 process] as consulting parties due to the nature of their legal or economic relation to the undertaking or affected properties, or their concern with the undertaking's effects on historic properties." 36 C.F.R. § 800.2(c)(5) (emphasis added).

The *Camden County* court found this argument "fail[ed] for two independent reasons." 371 F. Supp. 3d at 193. First, the regulatory language was permissive, not mandatory, "which is at least somewhat inconsistent with an intent to create a legal entitlement." *Id.* (citing *Three Rivers Ctr. for Indep. Living v. Hous. Auth. of the Cty. of Pittsburgh*, 382 F.3d 412, 419–20 (3d Cir. 2004) ("Personal rights are those intentionally and unambiguously conferred through rights-creating language.") (internal citation and quotations omitted)). "Second, and more to the point, *Sandoval* clearly states that Congress must create the asserted right in a statute; an executive agency cannot do so in a regulation." *Id.* (citing *Sandoval*, 532 U.S. at 291). The court concluded, therefore, that "the NHPA does not create a personal, privately enforceable right." *Id.*

Turning to the "private remedy" prong of the analysis, the court held that the plaintiff had failed to identify any express private remedy provision under the NHPA and that the statute's "attorneys fees provision is not tantamount to a private remedy provision." *Id.* at 193 n.12 (citing *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1099 (9th Cir. 2005) (finding in the absence of any private right of action language, a fee provision is "ambiguous on the cause of action point" and "such an ambiguity can hardly be converted into an implied right of action"); *Friends of Hamilton Grange v. Salazar*, No. 08-5220, 2009 WL 650262, at *21 (S.D.N.Y. Mar. 12, 2009) ("[T]he presence of a fee award provision is not dispositive of the issue of a private right of action . . . . Having found that the text of Section 106 and 110, wholly directed at agencies, does not provide a private right of action, plaintiffs' claims arising directly under the

NHPA are therefore dismissed.").

Addressing the plaintiff's argument that a failure to recognize a private right of action under the NHPA would leave the statute "with no enforcement provision at all," the court noted that review of agency action was nonetheless available under Section 706(2) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq. Camden Cty. Historical Soc'y*, 371 F. Supp. 3d at 193. The court further found that "the absence of a remedy provision cannot be an invitation for the courts to create such a remedy." *Id.* at 194 (citing *Sandoval*, 532 U.S. at 286–87; *Three Rivers Ctr. for Indep. Living*., 382 F.3d at 420). The court concluded "that the NHPA does not create a private right of action." *Id.*

Following the decision in *Sandoval*, courts in other circuits and districts have similarly held or suggested that no private right of action exists under the NHPA. *E.g.*, *Shanks v. Dressel*, 540 F.3d 1082, 1092 (9th Cir. 2008) (holding that Section 106 of the NHPA does not provide a private right of action and that challenges must be brought under the APA); *Karst Envtl. Educ. & Prot., Inc. v. E.P.A.*, 475 F.3d 1291, 1295 (D.C. Cir. 2007) ("[The] NHPA, like NEPA, contains no private right of action."); *San Carlos Apache Tribe*, 417 F.3d at 1099 (same); *Nat'l Post Office Collaborative v. Donahoe*, No. 13-1406, 2013 WL 5818889, at *8 (D. Conn. Oct. 28, 2013) ("[B]ecause NEPA and NHPA do not provide private rights of action, courts review agency actions under the [APA]."); *see also Coal. of Concerned Citizens To Make Art Smart v. Fed. Transit Admin. of U.S. Dep't of Transp.*, 843 F.3d 886, 901 (10th Cir. 2016) (noting in *dicta* that no private right of action exists under the NHPA or NEPA); *Narragansett Indian Tribe v. R.I. Dep't of Transp.*, 903 F.3d 26, 29–30 (1st Cir. 2018) ("We have previously assumed, without deciding, that the NHPA creates some type of private right of action. Such an assumption subsequently became more tenuous in the wake of [*Sandoval*].") Considering the weight of the persuasive authority and

because Plaintiff did not brief the issue,[10] the Court finds Plaintiff has failed to establish the NHPA provides a private right of action, and has, therefore, failed to establish a likelihood of success on the merits as to her NHPA claim.[11]

> **B.** **Plaintiff Fails to Establish A Likelihood of Success on the Merits for Her NEPA Claim**

As with her NHPA claim, Plaintiff advances no argument that the NEPA provides a private right of action. (*See generally* Pl.'s Moving Br.; *see generally* Pl.'s Reply Br.) Moreover, post-*Sandoval*, the Third Circuit has held that there is no private right of action under NEPA and that plaintiffs must instead bring suit under the APA. *See Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) ("Because NEPA does not include a citizen's suit provision, [the plaintiffs] commenced this action by way of the [APA].").

Here, Plaintiff brings a one-count Complaint asserting claims under the NHPA, NEPA, and analogous state law provisions. (Compl. *7.) Plaintiff does not assert a claim under the APA. (*See id.*) Nor does Plaintiff's subsequent briefing mention or discuss the APA. (*See generally* Pl.'s Moving Br.; *see generally* Pl.'s Reply Br.)[12] Given the weight of the persuasive authority and

---

[10] In her opposition brief, Defendant argued that neither the NHPA nor the NEPA creates a private right of action. (*See* Def.'s Opp'n Br. 18.) Plaintiff did not address this argument in her Reply Brief. (*See generally* Pl.'s Reply Br.)

[11] Because the Court finds that Plaintiff has failed to establish a likelihood of success on the merits, the Court does not reach the remaining factors of the TRO analysis.

[12] In her Reply Brief, Plaintiff references and advances arguments as to the applicability of certain provisions of the Rivers and Harbors Act, 33 U.S.C. §§ 401, *et seq.*, and the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, to the present matter. (*See* Pl.'s Reply Br. *3.) Plaintiff does not, however, assert a claim under any of these statutes. (*See* Compl. *7.) Moreover, "[a] party may not amend a pleading by way of allegations in an opposition brief." *Soto v. New Jersey*, No. 17-13450, 2019 WL 1724258, at *5 n.5 (D.N.J. Apr. 18, 2019) (citing *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007)). The Court, therefore, does not consider Plaintiff's arguments as to these statutes.

because Plaintiff did not raise the issue, the Court finds Plaintiff has failed to establish that the NEPA provides a private right of action and has, therefore, failed to establish a likelihood of success on the merits as to her NEPA claim.[13]

### C. Plaintiff's State Law Claims

Having found that neither the NHPA nor NEPA provides a private right of action, the Court *sua sponte* considers whether to dismiss these claims for failure to state a claim. *See Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) ("The district court may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action."); *Michaels v. State of N.J.*, 955 F. Supp. 315, 331 (D.N.J. 1996) ("It is well established that, even if a party does not make a formal motion to dismiss, the court may, *sua sponte,* dismiss the complaint where the inadequacy of the complaint is clear."); *see, e.g.*, *Garden City Boxing Club, Inc. v. Fernandez*, No. 05-3873, 2006 WL 8457730, at *3 (D.N.J. May 31, 2006) (denying the plaintiff's motion for default judgment and *sua sponte* "dismissing the case without prejudice because [p]laintiff has not stated a claim upon which relief can be granted."); *Huafeng Xu v. Walsh*, No. 13-5626, 2014 WL 4388663, at *1 (D.N.J. Sept. 4, 2014), *aff'd*, 604 F. App'x 124 (3d Cir. 2015) (*sua sponte* dismissing the plaintiff's complaint for failure to state a claim); *see also 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357* (3d ed. 2004) ("Even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").

---

[13] Because the Court finds the Plaintiff has failed to establish a likelihood of success on the merits, the Court does not reach the remaining factors of the TRO analysis.

Here, because neither federal statute provides a private right of action for Plaintiff's claims, Plaintiff has failed to state a claim that arises under federal law. The Court, accordingly, *sua sponte* dismisses Plaintiff's federal law claims. Because the Court dismisses Plaintiff's claims arising under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims. 28 U.S.C. § 1367(c) (stating a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction").

Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, the Court does not consider the claims in its TRO analysis. Having found Plaintiff failed to establish a likelihood of success on the merits as to her NHPA and NEPA claims, the Court denies Plaintiff's Motion for a TRO. *See NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (Failure to establish any element renders the remedy inappropriate). Because the Plaintiff's claims over which the Court has original jurisdiction are dismissed for failure to state a claim and because the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, the Court *sua sponte* dismisses Plaintiff's Complaint without prejudice. The Court shall grant Plaintiff leave to amend her Complaint.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Complaint (ECF No. 1) is dismissed without prejudice and Plaintiff's Motion for a Temporary Restraining Order (ECF No. 2) is denied. The Court will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Dated: March 18, 2020